ORIGINAL

FILED

2008 MAY 23  PM 2: 35

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ KMH _____DEPUTY

**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN (State Bar No. 179272)
Email: mjt@wtwlaw.com
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

**COLEMAN & EDWARDS, P.C.**
GREGORY F. COLEMAN
Email: gcoleman@colemanedwardspc.com
4800 Old Kingston Pike, Suite 120
Knoxville, Tennessee 37919
Telephone: 865-247-0080
Facsimile: 865-247-0081

[Additional Counsel Listed on Signature Page]
Attorneys for *Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MARLIESE WEED on behalf of herself and all others similarly situated,

                Plaintiff,

    v.

AMERICA'S COLLECTIBLES NETWORK, INC. d/b/a JEWELRY TELEVISION,

                Defendant.

Case No. '08 CV 0925 WQH CAB

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

# BY FAX

1    Plaintiff, Marliese Weed, individually and on behalf of all others similarly situated, by

2    and through her undersigned attorneys, brings this action against Defendant America's

3    Collectibles Network, Inc. d/b/a Jewelry Television ("Jewelry Television"), based upon personal

4    knowledge as to herself, and as to all other matters, based upon information and belief and upon

5    the investigation of Plaintiff's counsel to date, demanding a trial by jury, and alleges as follows:

6                              **INTRODUCTION**

7    1.    Plaintiff Marliese Weed brings this action as a class action on behalf of herself

8    and a Class consisting of persons or entities in the State of California and elsewhere throughout

9    the United States who purchased gemstones described by Defendant as green or red "andesine -

10   labradorite" from Defendant from January 1, 2003 – the present.   Plaintiff brings this action to

11   recover the money that she and the Class spent on gemstones fraudulently advertised and

12   misrepresented by Defendant as being a highly-coveted, extremely rare, all natural, expensive

13   gem that looks like Oregon sunstone, an exceptionally rare feldspar with vivid reddish-orange

14   colors. In reality, Defendant has sold to customers throughout the United States of America low-

15   cost yellow or colorless labradorite that has been given a chemical "facelift" to make it appear

16   like the rare Oregon sunstone.

17                              **THE PARTIES**

18   2.    Plaintiff Marliese Weed is a resident of the County of San Diego, State of

19   California.  Ms. Weed purchased andesine-labradorite from Defendant during the class period at

20   a cost of over $4,000.

21   3.    Defendant America's Collectibles Network, Inc. d/b/a Jewelry Television is a

22   corporation organized under the law of the State of Tennessee and with a principal place of

23   business at 10001 Kingston Pike Street 57, Knoxville, Tennessee, 37922.   Defendant is

24   authorized to do business in California, has sufficient minimum contacts with California,

25   broadcasts a full-time satellite and cable television show on channels JTV and JWLTV

26   nationwide and in California, promotes and sells it products in California and nationwide on

27   www.jewelerytelevision.com, markets, delivers, promotes, and advertises its products to

28   consumers in California and throughout the United States, and/or otherwise has intentionally

                                    2

1    availed themselves of the market in California through the promotion, marketing and sale of its

2    products in California, so as to render the exercise of jurisdiction by this Court permissible under

3    traditional notions of fair play and substantial justice.

## JURISDICTION AND VENUE

4        4.    The Court has original jurisdiction over this class action pursuant to 28 U.S.C.

5    §1332(d)(2).  Plaintiff and members of the putative class have suffered aggregate damages

6    exceeding $5,000,000, exclusive of interest.

7        5.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a)(2) because

8    a substantial part of the events or omissions giving rise to the claim occurred in this judicial

9    district. At all relevant times, Defendant marketed and sold its products to purchasers in

10   California, including but not limited to in this County.

## FACTS

11       6.    During the class period Defendant marketed and sold gemstones which it has

12   described as "andesine-labradorite" (the "Gemstones").  According to Defendant, these

13   Gemstones are all natural, among the most rare stones on the face of the earth, and the most

14   collectible Gemstone on the planet that has seen incredible appreciation in the recent past.

15       7.    These claims false: JTV has now admitted –after a slew of consumer complaints -

16   that the Gemstones are "heated." Defendant has sold what in reality is nothing but colorless and

17   yellow common feldspar that was chemically treated to give the Gemstones their color. Demand

18   for these Gemstones was artificially inflated because of the unlawful misconduct by JTV and

19   consumers of the Gemstones are victims of JTV, who are running what is reminiscent of a

20   "boiler room" operation as it relates to these Gemstones.

21       8.    Jewelry Television's actions were in direct contravention to the Federal Trade

22   Commission's ("FTC") Guides for the Jewelry, Precious Metals, and Pewter Industries.

23   *Available at: http://www.ftc.gov/bcp/guides/jewel-gd.shtm.* Indeed, the FTC declares it unfair or

24   deceptive to fail to disclose that a gemstone has been treated when it has a significant effect on

25   the gemstone's value.  §23.22(c).  The FTC guidelines also make clear that it is unfair and

26   deceptive to call a gemstone genuine, natural, precious, or real when it is in fact not. §23.24.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

9.     Defendant's website explains to consumers that Andesine and Labradorite are each distinct members of the feldspar mineral family, and that their self-coined "andesine-labradorite" gems contain such a "close relationship between both minerals" that the gems cannot be separated by gemologists "with the standard array of tools available to the trade." *See* www.jewelrytelevision.com/ index.aspx?tid=24222.

10.     The red and green Gemstones that the company has sold to consumers greatly resemble Oregon sunstone, a rare feldspar with vivid reddish-orange colors. Oregon sunstone is mined and marketed by American vendors proud of the natural and untreated beauty and value of their rare gemstones, and the only verified known source of such gemstones is Oregon. All-natural Oregon sunstone sells for at least $100 per carat, usually far more.

11.     Defendant, through its website, claims to be unable to answer the question "What gives red and green andesine-labradorite their color," responding that "[t]his question has not been answered yet. Although major labs have studied these gemstones, the nature of the color is still conjecture. This may change in the near future." www.jewelrytelevision.com/index.aspx?tid=24222

12.     In fact, Defendant's Gemstones only resemble the *real* Oregon gemstones as a result of artificial treatment including heating and/or diffusion of low-value yellow feldspar from China, Mexico, Mongolia, and/or other inexpensive sources.

13.     During the class period, Defendant, a very large and sophisticated company with in excess of $400 million in revenues last year, knew or should have known that the Gemstones it was selling were shams and nothing more than the mass-produced result of chemical facelifts in gemological beauty parlors. Upon information and belief, these "facelifts" were done to the inexpensive and abundant yellow or colorless labradorite.

14.     Defendant, upon information and belief, obtained its sham product for pennies per carat and sold it for extraordinary profits. Because the sham Gemstones came from plentiful low-value yellow feldspar, Defendant was able to sell them for great profits while still undercutting the per-carat price of real Oregon sunstone.

4

15.    Defendant stated that its lower prices had nothing to do with cosmetic improvement and everything to do with production costs, availability (JTV claimed to have the largest inventory in the World), and the mysterious discovery of purported new sources of the Gemstones.

16.    Defendant likewise touted, on national television broadcast around the country, that the stones are "100% natural." The following is a transcript of a sales presentation made for Red Andesine-Labradorite jewelry on a Jewelry Television show, given by two Jewelry Television presenters:

*[Speaker #1]:*  This ring that you are going to be seeing. And we are talking about rarity, we're talking about, this could - there are only 25 of these. This could actually be the most rare gemstone on the face of the planet. And when I say could be your saying well it could be well do you not know?  Nope. Do you know why? We want - From every bit of factual information that we have right now we could say that it's the most rare gemstone on the face of the planet but the reason that we can't is because nobody knows exactly where the mine site is.  And we have probably – no not probably, let me take that back.  We have at Jewelry Television, documented [sic] the best supply of red andesine labradorite in the entire world.  We at Jewelry TV.  We are basically and primarily a gemstone company....Red labradorite went from $2,000 to $3,000 carat retail in one week.

*[Speaker #2]:*  True story – fact. [picks up and shows a calculator].

*[Speaker #1]:*  [Angela, the show planner and merchandiser] said, something must really really be desperately going on in that mine site for it to have gone from 2 to 3 thousand in one week.  I'm talking about serious depletion. So guys $3,000 a carat on the red andesine labradorite.... This is a ring that could potentially be more rare than Alexandrite more rare than Tanzanite more rare than Paraiba Tourmaline and more rare than all of them put together.

*[Speaker #2]:*  Absolutely.

*[Speaker #1]:*  And the reason that we know that to be true is because we know that we've got the largest supply of red andesine labradorite in the world and we don't have much and we can't get much. It is the best kept secret in the history of jewelry. There has never been a gemstone that the mine site has been kept a hidden secret for this amount of time....  I am trying to keep up with what is going on and they are saying that red andesine labradorite is just [...] it's a mystery stone it is a fabulous gemstone.

*[Speaker #2]:*  A connoisseur's delight.

*[Speaker #1]:*  It is the most collectible gemstone in the planet right now, the most talked about.  $3,000 a carat. Take a look at

5

this up close. At 2.30 carats for the red labradorite. [...] So lets just assume that since you've got the 44 points of diamonds. A collector could pay $7,000 for this easy.

*[Speaker #2]:* Oh yeah.

*[Speaker #1]:* A collector could pay 7,000 for this. This could be a 7,000 baby. A collector. Guys and the stone is 100 % natural and untreated. Now let me just say this. When we bought this, the stone was $500 dollars. When we bought it, it was $500. It was not $3,000 a carat when we bought this. [...]

*[Speaker #2]:* It's a sensational value.

*[Speaker #1]:* [...] [T]his could be the most important piece of jewelry you ever collected in your entire life because $3,000 a carat is the retail on the stone and to get a stone over a half a carat is considered to be a miracle. A half a carat is considered to be a miracle. Now let me tell you what we've done, because of the price jump of red andesine labradorite. We are going to show you every piece of lab that we have to my knowledge at all on the jewelry site and its four. How does that strike you. This is a company with 3,000 something employees last count and we have billions of pieces of jewelry, billions, billions! And we have four selections of red andesine labradorite. Okay, that should help someone [...].

*[Speaker #2]:* As you are ordering this, understand if you are learning about Andesine you're curious, what is this red andesine labradorite. And the Andesine is the codicil that's the indicator that's the one that says get on it and grab it. Take it to a certified gemologist – if you are learning about gemology – get on the website – get some of the books and start learning and understand. What I want you to do is get this home. It is such an incredible value I am so serious about this and what this gemstone will mean in the world of jewelry [...] get it home and then do the research you've got 30 days to do the research and if it does not come back with everything we said and its 100 times more – which we can't even get to – it's a college course really when you think about it because you can study gemology for a lifetime and never understand it completely. Its one of those fields and endeavors that is constantly evolving and changing but this is a very important gem in the world of collectibles. It's a big carat weight. It looks like a ... sapphire. It is 100% natural and there are so few gems in the world that can come close to that fact. So few. [...] [R]ed andesine labradorite which comes from the family - it's a feldspar [sic] andesine labradorite....

17.    The results of tests on the Gemstones, conducted by gemologists, reflect that the Gemstones have been artificially colorized by surface diffusion of copper and iron and other treatment. In other words, the "rich greens and reds of both minerals" composing Defendant's Gemstones are only surface-deep and the gems are not "100% natural."

6

18.    The stones sold by Defendant originally came from nature with none of the color and appearance virtues on which Defendant has touted the stones.  The beauty is phony, nothing more than a factory add-on.

19.    During the pertinent times, Defendant has sold what in reality was nothing but colorless and yellow common feldspar, which benefited from secret treatment to give stones thick color rinds of red and green.

20.    In December 2007, Defendant advertised the Gemstones on its television network for prices of, for example, a one carat stone for $149, three carat stone for $689, four carat stone for $919.  In January 2008, Defendant was advertising the Gemstones for prices of, for example, a one carat stone for $49, and a one carat stone in a ring for $79.

21.    In January 2008, Defendant on its television network promoted the Gemstones for their purported resale value and touted how consumers could learn more about andesine labradorite on its website.

22.    In or about January 2008, Defendant marketed the Gemstones as products that were selling out fast and announced how Defendant was on the cusp of announcing information regarding andesine labradorite that purportedly no one in the gem world had been able to discover.

23.    In February 2008, Defendant announced that it had purportedly found an andesine mine in China, but also --- after receiving consumer complaints --- admitted that the Gemstones that they had touted as 100% natural really derived their color from artificial treatment.

24.    In February 2008, Jewelry Television co-founder Jerry Sisk claimed that Defendant always thought the Gemstones were natural, and that Defendant had sent samples to major labs that were all unable to shed any light on the truth about the Gemstones.

**Interviewer**:  We thought this color was natural.  Can you tell us a little bit about that?

**Jerry Sisk** *(co-founder Jewelry Television)*:  I think everybody did.  We all sent samples to the major labs.  And they didn't know the mechanism.  They couldn't determine the mechanism.  So basically they couldn't say this was treated.  So it was assumed the material was natural.  It wasn't until we actually got to the mine, saw the operation, and saw how they were performing that

7

transformation that we knew the truth and now we're bringing it out.

25.    After an uprising of consumer complaints, Defendant admitted that the Gemstones it had been selling were "heated" but even then insisted that this treatment is acceptable and that the artificially enhanced Gemstones somehow have the same value as real, all-natural gemstones:

> **Interviewer**: When we discovered the mine, we actually found out the material was heat treated. Does this affect the value of the stone?
>
> **Jerry Sisk**: No. What you're buying is the color. And color rules when it comes to gem stones. The other thing is when we found the mine we realized that they would take a ton of material, of raw material, earth. They would basically get 2 to 2.2 pounds of rough out of that ton of earth. And then, when they treated it, they maybe had 2-3 ounces of material that changed. So you're talking about from a ton to come down to 2 or 3 ounces and not all that is even cutable. So you start realizing that it's a rare gemstone because very little material ends up the way you really want it to be.

Defendant also offered customers a brief return period which was not publicized or advertised, was ill-administered, and did not even begin to correct the harm that was done.

26.    Pursuant to the Federal Trade Commission ("FTC") "Guides for the Jewelry, Precious Metals, and Pewter Industries," at § 23.22, "[i]t is unfair or deceptive to fail to disclose that a gemstone has been treated if . . . the treatment has a significant effect on the stone's value. The seller should disclose that the gemstone has been treated." According to the FTC's note to § 23.22, "[t]he disclosures outlined in this section are applicable to sellers at every level of trade" and "where a jewelry product can be purchased without personally viewing the product, (e.g., direct mail catalogs, online services, televised shopping programs) disclosure should be made in the solicitation for or description of the product." During the pertinent times, Defendant systematically failed to provide these required consumer disclosures.

27.    Pursuant to FTC Guide § 23.1, "[i]t is unfair or deceptive to misrepresent the type, kind, grade, quality, quantity, metallic content, size, weight, cut, color, character, treatment, substance, durability, serviceability, origin, price, value, preparation, production, manufacture, distribution, or any other material aspect of an industry product." Defendant violated this provision.

8

28.    Pursuant to FTC Guide Note 2 to § 23.1, "[t]o prevent deception, any qualifications or disclosures, such as those described in the guides, should be sufficiently clear and prominent." Defendant did not comply with this provision.

29.    Pursuant to FTC Guide § 23.2, "[i]t is unfair or deceptive to use, as part of any advertisement, packaging material, label, or other sales promotion matter, any visual representation, picture, televised or computer image, illustration, diagram, or other depiction which, either alone or in conjunction with any accompanying words or phrases, misrepresents the type, kind, grade, quality, quantity, metallic content, size, weight, cut, color, character, treatment, substance, durability, serviceability, origin, preparation, production, manufacture, distribution, or any other material aspect of an industry product." Defendant violated this provision.

30.    Defendant's failures to comply with the pertinent FTC provisions evidences Defendant's violations of the CLRA, and California's Unfair Competition Laws and False Advertising Laws.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this class action, pursuant to the provisions of California Code of Civil Procedure § 382, California Civil Code § 1781, and Federal Rule of Civil Procedure 23, on behalf of the following class ("Class"):

> All persons and entities in the United States who purchased Gemstones from Defendant from January 1, 2003, to the present.

32.    Excluded from the Class is the Defendant, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant; business entities for purposes of Plaintiff's claim for relief under the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*; the Judge assigned to this action, any member of the Judge's immediate family; and counsel for Plaintiff.

33.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

34.     Although the exact number and identity of Class members is not presently known, they can be identified in Defendant's records through discovery.   Nonetheless, Plaintiff is informed and believes that thousands of consumers purchased Gemstones within the United States during the class period.  The class is, therefore, so numerous and geographically dispersed that joinder of all members in one action is impracticable.

35.     There are numerous common questions of fact and law arising out of Defendant's conduct and its false and misleading sales practices associated with the Gemstones.  The issues alleged herein are ones of a common or general interest, of many persons, and it is impracticable to bring them all before the court, such that one or more may sue for the benefit of all. Defendant has acted with respect to Plaintiff and members of the proposed class in a manner generally applicable to each of them.

36.     Common questions of fact and law predominate over any questions affecting only individual members of the Class.  The predominating common or class-wide questions of fact include the following:

      a.     whether Defendant falsely advertised the Gemstones;

      b.     whether the Gemstones were in fact artificially enhanced to show colors that they did not originally have;

      c.     whether the artificially enhanced Gemstones have the same value as gemstones that authentically and originally have the color qualities;

      d.     whether Defendant used false, misleading, and/or deceptive statements or representations in selling the Gemstones;

      e.     whether Defendant's actions with respect to the sale and marketing of the Gemstones were unconscionable;

      f.     whether Defendant represented on Gemstones' advertising that Gemstones had a characteristics, ingredients, uses, or benefits that they did not have, in violation of California Civil Code § 1770(a)(5);

10

g. whether Defendant represented that Gemstones were of a particular standard, quality, or grade that they were not, in violation of California Civil Code § 1770(a)(7);

h. whether Defendant advertised Gemstones with the intent not to sell it as advertised in violation of California Civil Code § 1770(a)(9);

i. whether Defendant is subject to liability for violating the Consumers Legal Remedies Act, California Civil Code § 1750 et seq.;

j. whether Defendant has violated the Unfair Competition Law, California Business and Professions Code § 17200 et seq.;

k. whether Defendant has violated the False Advertising Law, California Business and Professions Code § 17500 et seq.;

l. whether Plaintiff and class members are entitled to an award of compensatory damages pursuant to California Civil Code § 1780(a)(1);

m. whether Plaintiff and class members are entitled to an award of statutory damages pursuant to California Civil Code § 1780(a)(1);

n. whether Plaintiff and class members are entitled to an award of restitution pursuant to California Civil Code § 1780(a)(3);

o. whether Plaintiff and class members are entitled to an award of punitive damages pursuant to California Civil Code § 1780(a)(4);

p. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged herein, such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the proposed class; and

q. whether the class is entitled to an award of restitution;

37. Defendant's defenses, to the extent that any such defenses apply, are applicable generally to Plaintiff and the entire Class and are not distinguishable as to proposed Class Members.

11

38.    Plaintiff's claims are typical of the claims of all proposed class members as a whole, all of whom have sustained damages, as a proximate, direct, or legal result of the common course of conduct of Defendant as complained of herein.  Plaintiff's claims are typical of the Class because Defendant subjected all Class members to the same course of conduct.

39.    Plaintiff will fairly and adequately represent and protect the interests of the proposed class, and does not have interests that are antagonistic to or in conflict with those he seeks to represent.  Plaintiff has retained counsel who have considerable experience in the prosecution of class actions and other forms of complex litigation.  Plaintiff is able to fairly and adequately protect the interests of all members of the Class.

40.    Under the factual and legal circumstances alleged herein, a class action proceeding it superior to any other methods available for both fair and efficient adjudication of the rights of each Class member.  In view of the complexity of the issues and the expense that an individual plaintiff would incur if he or she attempted to obtain relief from a large corporation such as those that have been named as Defendant in this action, the separate claims of individual class members or joinder of individual members of the class is impractical because the claims are monetarily insufficient to support separate actions. Because of the size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of in this Complaint.

41.    To process individual cases would also increase the expense and delay to Class Members, the Defendant, and the Court.  In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by the way of the comprehensive and efficient supervision of the litigation by a single court.

42.    The proposed class is readily definable, and prosecution of Plaintiff's claims as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent a class action, class members will continue to suffer losses, Defendant's violations of law will be allowed to

12

1   proceed without a full, fair, judicially supervised remedy, and Defendant will retain sums

2   received as a result of its wrongdoing. A class action therefore provides a fair and efficient

3   method for adjudicating this controversy.

4       43.   The prosecution of separate claims by individual class members would create a

5   risk of inconsistent or varying adjudications with respect to thousands of individual class

6   members, which would, as a practical matter, dispose of the interests of the class members not

7   parties to those separate actions or would substantially impair or impede their ability to protect

8   their interests and enforce their rights.

9       44.   Notice of a certified class action and of any resolution of the litigation can be

10   provided to Class members by first-class mail, email, broadcasting on Defendant's own

11   networks, or publication, or such other methods of notice as deemed appropriate by the Court.

12       45.   Defendants benefited from the sale of the Gemstones to Plaintiff and the Class,

13   and the benefit to Defendant can be identified from the sale and the monies received from the

14   Gemstone purchasers. All or a portion of this benefit retained by Defendant is money in which

15   Plaintiff and the Class have an ownership interest. Plaintiff and the Class were injured and lost

16   money as a result of Defendant's unfair, unlawful, and fraudulent business practices described

17   herein.

18   **FIRST CLAIM FOR RELIEF**
**(For Violations of the Consumers Legal Remedies Act Cal. Civ. Code §§1750, *et seq.*)**

19       46.   Plaintiff realleges and hereby incorporates by reference the allegations set forth in

20   each of the preceding paragraphs of this Complaint as if they were fully set forth herein.

21       47.   This claim is brought pursuant to California Civil Code § 1750 et seq., the

22   California Consumers Legal Remedies Act ("CLRA").

23       48.   Defendant is a "person" within the meaning of Civil Code §§1761(c) and 1770,

24   and sell "goods" within the meaning of Civil Code §§1761(b) and 1770.

25       49.   Plaintiff and the Class are consumers within the meaning of Civil Code §1761(d).

26       50.   The subject Gemstones under California Civil Code § 1761(a) constitute "goods."

27       51.   Plaintiff and the Class' purchase of a Gemstone from Defendant constitutes a

28   transaction within the meaning of Civil Code §§1761(e) and 1770.

13

52.    Defendant's conduct violated and continues to violate the CLRA in at least the following respects:

    a.    In violation of §1770(a)(2) of the CLRA, Defendant "misrepresent[ed] the source, sponsorship, approval, or certification of goods."

    b.    In violation of § 1770(a)(3) of the CLRA, Defendant "misrepresent[ed] the affiliation, connection, or association with, or certification by, another."

    c.    In violation of §1770(a)(4) of the CLRA, Defendant "us[ed] deceptive representations or designations of geographic origin in connection with goods,

    d.    In violation of § 1770(a)(5) of the CLRA, Defendant "represent[ed] that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have,"

    e.    In violation of §1770(a)(7) of the CLRA, Defendant represented that goods are of a particular standard, quality or grade when they are of another.

    f.    In violation of §1770(a)(9) of the CLRA, Defendant advertised goods with the intent not to sell them as advertised.

    g.    In violation of §1770(a)(14) of the CLRA, Defendant represented that the transaction was supplied in accordance with a previous representation when it has not.

53.    Defendant engaged in these unfair and/or deceptive acts and practices with the intent that they result, and which did result, in the sale of the Gemstones to Plaintiff and the Class.

54.    In purchasing the Gemstones from Defendant, Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by Defendant with respect to the value, quality, and gemological make-up of the Gemstones.  In

14

1  other words, Defendant induced Plaintiff and the Class to purchase the Gemstones through the

2  acts and omissions alleged herein.

3    55.    Upon information and belief, under California Civil Code § 1755, to the extent

4  that Defendant may be found to be "the owners or employees of any advertising medium,

5  including, but not limited to, newspapers, magazines, broadcast stations, billboards and transit

6  ads, by whom any advertisement in violation of this title is published or disseminated," said

7  Defendant had knowledge of the deceptive methods, acts or practices declared to be unlawful by

8  Section 1770.

9    56.    In engaging in unfair or deceptive conduct in violation of the CLRA, Defendant

10  actively concealed and failed to disclose material facts about the true characteristics of the

11  Gemstones purchased by Plaintiff and the Class.

12    57.    As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff

13  seeks and order enjoining Defendant from continuing to engage in unlawful, unfair or fraudulent

14  business practices, and any other act prohibited by law.

15    58.    Plaintiff has contemporaneous with the filing of this Complaint provided notice to

16  Defendant pursuant to Civil Code §1782(a), and will amend to add claims for damages under the

17  CLRA if Defendant does not take appropriate corrective action.  These damages are likely to

18  include those available under California Civil Code § 1780(a) (for damages resuling from the use

19  or employment by Defendant of a method, act, or practice declared to be unlawful by Section

20  1770); California Civil Code § 1780(a)(1)(actual damages); California Civil Code § 1780(a)(3)

21  (restitution); California Civil Code § 1780(a)(4) (punitive damages); and California Civil Code §

22  1780(a)(5)(any other relief which the court deems proper).

23    59.    Pursuant to California Civil Code § 1780(d), Plaintiff and class members are

24  entitled to an award of court costs and attorney's fees.

25    60.    Pursuant to California Civil Code § 1783, this claim is brought not more than

26  three years from the date of the commission of the alleged improper method, act, or practice.

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## SECOND CLAIM FOR RELIEF
### (For Violations of the Unfair Competition Law Cal. Bus. & Prof. Code §§17200, et seq.)

61. Plaintiff realleges and hereby incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as if they were fully set forth herein.

62. This claim is brought pursuant to the California Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq.

63. Plaintiff may pursue a representative claim on behalf of others in that Plaintiff meets the standing requirements of California Business and Professions Code §§ 17204 and complies with Section 382 of the Code of Civil Procedure.

64. Defendant's acts and practices relating to its sales and advertisements of the Gemstones, as described herein, constitute unlawful, unfair or fraudulent business practices in violation of the UCL.

65. The utility of Defendant's marketing and sale of the Gemstones to the public is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class. Defendant's acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

66. The above-described unfair, unlawful and fraudulent business practices conducted by Defendant present a threat and likelihood of harm and deception to members of the Class in that Defendant has systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

67. Defendant's acts and practices constitute unlawful business practices in violation of Business and Professions Code §§17200 et seq. because, among other things, they violate the CLRA, Cal. Civ. Code §§1750 et seq., Business & Professional Code §§17500 et seq., and the FTC Guide for the Jewelry, Precious Metals, and Pewter Industries, §§23.22 et seq..

68. Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendant alleged herein, and therefore bring this claim for relied for restitution and disgorgement. Plaintiff is a person who has suffered injury in fact and has lost money as a result of such unfair competition.

16

69.     In purchasing the Gemstones from Defendant, Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by Defendant with respect to the value, quality, and gemological make-up of the Gemstones. In other words, Defendant induced Plaintiff and the Class to purchase the Gemstones through the acts and omissions alleged herein.

70.     Pursuant to Business and Professions Code §§17200 and 17203, Plaintiff, on behalf of herself and the Class, seek an order of this Court: enjoining the Defendant from continuing to sell and market the Gemstones to the public without fully disclosing their true characteristics. Plaintiff and the Class are further entitled to, and pray for, restitution of all monies paid in connection with Defendant's unconscionable sale of the Gemstones.

71.     Plaintiff further request an order awarding Plaintiff and the Class restitution and disgorgement of profits acquired by Defendant by means of such unlawful acts and practices, so as to deter Defendant and to rectify Defendant's unfair and unlawful practices and to restore any and all monies to Plaintiff and the class, which are still retained by Defendant, plus interest and attorneys' fees and costs pursuant to, *inter alia*, Code of Civil Procedure §1021.5.

72.     Pursuant to California Business and Professions Code §§ 17204 and 17535, Plaintiff and class members have suffered injury in fact and have lost money or property as a result of a violation of the UCL.

73.     Defendant has further violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, as alleged above; by falsely advertising Gemstones; and otherwise by engaging in fraudulent and deceptive conduct.

**THIRD CLAIM FOR RELIEF**
**(For Violations of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§17500, *et seq.*)**

74.     Plaintiff realleges and hereby incorporate all proceeding paragraphs as if they were fully set forth herein

75.     Plaintiff and the Class have suffered injury in fact and lost money and/or property, including but not limited to monies unlawfully, unfairly and deceptively obtained through the

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Defendant's sale of the Gemstones. Plaintiff has standing to pursue her claims under Business

2    and Professions Code §§ 17203, 17205, and 17500.

3        76.    Defendant's actions, as alleged herein, occurred in the conduct of trade or

4    commerce directly or indirectly affecting consumers throughout California and the United States,

5    through their advertisements, marketing and representations concerning the Gemstones.

6        77.    In purchasing the Gemstones from Defendant, Plaintiff and the Class reasonably

7    believed and/or depended on the material false and/or misleading information provided by

8    Defendant with respect to the value, quality, and gemological make-up of the Gemstones. In

9    other words, Defendant induced Plaintiff and the Class to purchase the Gemstones through the

10   acts and omissions alleged herein.

11       78.    Defendants caused to be made or disseminated throughout California and the

12   United States, through advertising, marketing and other publications, statements that are untrue

13   or misleading, and which were known, or which by the exercise of reasonable care should have

14   been known to Defendants, to be untrue, misleading to consumers, Plaintiff and the Class.

15       79.    Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to

16   and seek an injunction prohibiting Defendants from engaging in the acts and practices

17   complained of, and recovery of their attorneys' fees and costs pursuant to, *inter alia*, Code of

18   Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF
#### (For Unjust Enrichment)

20       80.    Plaintiff realleges and hereby incorporate by reference the allegations set forth in

21   each of the preceding paragraphs of this Complaint as if they were fully set forth herein.

22

23       81.    By engaging in the conduct described in this Complaint, Defendant has been

24   unjustly enriched at the expense of Plaintiff and the Class by its sale of Gemstones by the use of

25   false advertising and by engaging in fraudulent and deceptive conduct.

26       82.    As a proximate result of Defendant's unlawful, fraudulent, and unfair conduct,

27   Defendant has obtained revenues by which they became unjustly enriched at Plaintiff and

28   members of the proposed class's expense.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

83.    Defendant was aware and had knowledge of the benefit it was receiving as a result of its unlawful, unfair, deceptive, and wrongful acts and omissions, as hereinabove alleged, and have enjoyed the benefit of their financial gains, to the detriment and at the expense of Plaintiff and the Class.

84.    Under the circumstances alleged herein, it would be unfair and inequitable for Defendant to retain the profits it has unjustly obtained at the expense of the Plaintiff and the class.

85.    Accordingly, Plaintiff seeks an order establishing Defendant as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendant to disgorge those funds to Plaintiff and members of the proposed class in a manner to be determined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendant, as follows:

1.    For an order certifying the class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff, and counsel, to represent the class;

2.    For an award of compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendant's unlawful acts and conduct;

3.    For an award of restitution, disgorgement and/or other equitable relief as the Court deems proper;

4.    That pursuant to sections 17203, 17204, and 17535 of the Business and Professions Code, Defendant be permanently enjoined from engaging in the  unlawful and deceptive acts and practices as alleged herein;

5.    For a permanent injunction prohibiting Defendant from engaging in the conduct and practices complained of herein;

6.    For an award of reasonable attorneys' fees and costs of suit, including expert witness fees;

7.    For an award of pre- and post-judgment interest on any amounts awarded; and

19

8.    For any and all other relief the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action for all the claims so triable.

Dated: May 23, 2008

Respectfully Submitted,

WEXLER TORISEVA WALLACE LLP

MARK J. TAMBLYN

1610 Arden Way, Suite 290
Sacramento, CA 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Gregory F. Coleman
COLEMAN & EDWARDS, P.C.
4800 Old Kingston Pike, Suite 120
Knoxville, TN 37919
Telephone: (865) 247-0080
Facsimile: (865) 247-0081

Kenneth A. Wexler
Edward A. Wallace
Amber M. Nesbitt
WEXLER TORISEVA WALLACE LLP
55 W. Monroe St. Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Attorneys for *Plaintiff, individually and on behalf of the proposed Class*

20

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**DECLARATION OF MARLIESE WEED
PURSUANT TO CALIFORNIA CIVIL CODE § 1780(C)**

I, Marliese Weed, declare as follows:

1.    I submit this declaration pursuant to section 1780 (c) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.    I am a resident of the State of California, San Diego County.

3.    Defendant America's Collectibles Network, Inc. d/b/a Jewelry Television is a Tennessee corporation that is doing business in California, including in San Diego County. A substantial portion of the transaction between myself and Defendant also occurred in California and, specifically, in San Diego County.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on May 23, 2008 in San Diego, California.

MARLIESE WEED

**ORIGINAL**

**✎JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Marliese Weed, on behalf of herself and all others similarly situated

### DEFENDANTS

America's Collectibles Network, Inc., d/b/a Jewelry Television

2008 MAY 23 PM 2: 35

**(b)** County of Residence of First Listed Plaintiff   San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Knoxville, TN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Mark J. Tamblyn/Wexler Toriseva Wallace LLP
1610 Arden Way, Suite 290, Sacramento, CA 95815

Attorneys (If Known)

**'08 CV 0925 WQH CAB** BY FAX

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Cal. Bus. & Professions Code § 17200, 17500 ; Cal. Civ Code § 1750 et seq   28 U.S.C. 1332 (5)

Brief description of cause:
CLRA, and California's Unfair Competition Laws and False Advertising Laws / Consumer fraud

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** >5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE  5/23/08

SIGNATURE OF ATTORNEY OF RECORD  _Mark J. T_

FOR OFFICE USE ONLY

RECEIPT # 151239  AMOUNT $350—  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AB 05/23/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151239    — MB**

**May 23, 2008**
**14:39:10**

**Civ Fil Non-Pris**
USAO #.: 08CV0925 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC3021984

**Total-> $350.00**

FROM: MARLIESE WEED VS
AMERICA'S COLLECTIBLES NETWORK